THE STATE EX REL. NESTLÉ USA–PREPARED FOODS DIVISION, INC., APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Nestlé USA–Prepared Foods Div., Inc.
v. Indus. Comm.,* 101 Ohio St.3d 386, 2004-Ohio-1667.]

(No. 2003–0393—Submitted November 18, 2003—Decided April 14, 2004.)

**Per Curiam.**

{¶ 1} The workers' compensation claim of appellee-claimant Karen S. Chesnick was originally allowed for "contusion left elbow/forearm and reflex sympathetic dystrophy of the left arm." Claimant received temporary total disability compensation ("TTC") intermittently thereafter.

{¶ 2} On December 2, 1999, claimant's attending physician, Dr. Tarvez Tucker, certified that claimant could not return to her former position of employment but released her to "limited work duties—40 hours a week—cannot use l[eft] hand regularly—she needs to vary her position (standing or sitting)." Her self-insured employer, appellant, Nestlé USA–Prepared Foods Division, Inc., informed claimant in January 2000 that it had no work within her restrictions and terminated her employment. It also told her that it would not pay any TTC because she could do other work, and advised her to seek wage-loss compensation instead.

{¶ 3} Claimant responded with a complaint to appellee Self–Insuring Employers Evaluation Board, claiming an unlawful termination of TTC. The board agreed and ordered Nestlé to pay all outstanding TTC within 30 days or face a $5,000 fine. Nestlé paid claimant the TTC owed.

{¶ 4} Nestlé turned to appellee Industrial Commission of Ohio, asking it to declare claimant ineligible for further TTC and for a declaration that some of the compensation paid was improperly ordered. The commission declined. It stressed that for purposes relevant here, a self-insured employer could terminate TTC without commission hearing only if the attending physician certified that claimant could return to the *former position of employment.* Since Dr. Tucker had stated that claimant could *not* return to her former job, TTC was appropriate and could not be terminated unilaterally.

{¶ 5} Nestlé moved to the Court of Appeals for Franklin County. In its mandamus complaint, it asserted its right to have unilaterally refused TTC payment and sought to prevent further compensation. The court of appeals agreed that Nestlé's unilateral termination was improper and upheld that portion of the commission's order. The issue of further compensation was returned to the commission for additional consideration in light of claimant's as-yet-unadjudicated request to have a psychiatric condition added to her claim.

{¶ 6} This cause is now before this court upon an appeal as of right.

{¶ 7} The key facts are not disputed. Claimant was medically prevented from returning to her former position of employment. She could, however, do light work. Nestlé declared that no such work was available. Claimant's entitlement to TTC is challenged, nonetheless, based on Nestlé's proposal that eligibility for wage-loss compensation forecloses TTC.

{¶ 8} Nestlé portrays as unique—and even unconscionable—what is actually a common workers' compensation occurrence—overlapping benefit eligibility. The system is replete with examples. The inability to perform sustained remunerative employment that defines permanent total disability ("PTD"), for instance, obviously subsumes the inability to return to the former position of employment required by TTC. Similarly, because benefits for permanent total disability compensate for a complete loss of earning capacity (see *State ex rel. Gen. Motors Corp. v. Indus. Comm.* [1975], 42 Ohio St.2d 278, 282, 71 O.O.2d 255, 328 N.E.2d 387), a claimant who qualifies for the former also qualified for an award for impaired earning capacity under former R.C. 4123.57(A). 135 Ohio Laws, Part I, 1690, 1700. Conversely, because permanent partial disability and temporary total disability compensate for two different things,[1] it is not inconsistent for a claimant who is eligible for one also to satisfy the requirements of the other.

{¶ 9} None of this suggests that a claimant can receive two types of compensation simultaneously. It does, however, show that concurrent eligibility is inherent in the system, as all workers' compensation benefits involve some variation on the ability to work. Therefore, eligibility overlap is unavoidable.

{¶ 10} These concepts are important because the wage-loss compensation currently at issue interacts with other forms of compensation in the same manner. A claimant, for example, who has sustained a total loss of earnings could theoretically elect to receive wage-loss compensation under R.C. 4123.56(B) instead of PTD. More pertinently, because wage loss and TTC derive from the

---

1. Permanent partial disability benefits are akin to a damages award. *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1975), 42 Ohio St.2d 278, 282, 71 O.O.2d 255, 328 N.E.2d 387. Temporary total disability compensates for a loss of earnings or earning capacity. *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533.

same statute and from a common root—the inability to return to the former position of employment—the overlap is great, so great that (excluding the job search usually required for wage loss) a claimant who qualifies for TTC often qualifies for wage-loss compensation and vice versa.

{¶ 11} This inevitable overlap rebuts Nestlé's argument that a claimant who is eligible to apply for wage-loss benefits is—or should be—automatically barred from TTC. Nestlé's position, moreover, is not supported by statute or case law. R.C. 4123.56(A) permits TTC termination only when (1) claimant actually returns to any sustained remunerative employment, (2) claimant's attending physician certifies that claimant can return to the former position of employment, (3) work within the claimant's physical capabilities is made available by an employer, or (4) claimant has reached maximum medical improvement. Eligibility for wage-loss compensation is not included in the termination criteria.

{¶ 12} Nestlé seizes on the third criterion and stresses that claimant can do other work. That ability, however, is irrelevant to TTC eligibility unless employment consistent with those abilities is made available by claimant's employer or another employer. This, in turn, assumes that an actual offer of employment has been made to the claimant. Since no offer of employment was made to claimant, Nestlé's reliance is misplaced.

{¶ 13} R.C. 4123.56(A) also states that "[w]here the employee is capable of work activity, but the employee's employer is unable to offer the employee any employment, the employee shall register with the director of job and family services, who shall assist the employee in finding suitable employment." The present claimant did not do this, but contrary to Nestlé's representation, her inaction does not require termination of TTC.

{¶ 14} Clearly, this registration provision seeks to facilitate the return to any gainful employment that wage-loss compensation promotes. It does not, however, specify loss of TTC as a penalty for noncompliance, much less permit a self-insured employer to cease TTC without a commission hearing, as Nestlé did.

{¶ 15} Having found that R.C. 4123.56 does not support Nestlé's position, we find that case law likewise fails to advance it. There are no cases that even imply that potential wage-loss eligibility automatically precludes TTC. The four court of appeals decisions that Nestlé cites discuss the history or goals of wage-loss compensation with little or no reference to TTC. See *State ex rel. Metal Seal & Products, Inc. v. Indus. Comm.* (Jan. 30, 1996), Franklin App. No. 95APD02–238, 1996 WL 39652 (Deshler, J., dissenting); *State ex rel. Smith v. Provincial Am. Transp.* (Mar. 15, 1994), Franklin App. No. 93AP–220, 1994 WL 85640; *State ex rel. Stevenson v. Orient State Inst.* (Sept. 30, 1992), Franklin App. No. 91AP–1152, 1992 WL 250417; *State ex rel. Sajar Plastics, Inc. v. Indus. Comm.* (July

31, 1990), Franklin App. No. 90AP–369. They do not support the premise claimed by Nestlé.

{¶ 16} Finally, the commission contends that Nestlé's proposal frustrates the goals of wage-loss compensation by encouraging employers to deny the availability of suitable alternative employment. Nestlé's position indeed defeats the wage-loss goal of returning the injured worker to the labor force as soon as possible. It also forces the claimant to leave his or her place of employment to seek work elsewhere, often to the disadvantage of the claimant. *State ex rel. Timken Co. v. Kovach,* 99 Ohio St.3d 21, 2003-Ohio-2450, 788 N.E.2d 1037, ¶ 27–28, for example, recently discussed the importance of workplace longevity and the benefits that accrue therefrom, stressing the advantages of alternative employment within the same company. This advantage is lost if the claimant's employer has an incentive to deny the availability of other work within a claimant's restrictions.

{¶ 17} For all of these reasons, the court of appeals' judgment is affirmed.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK, J., not participating.

---

Licata & Associates Co., L.P.A., Louis J. Licata and Jody Perkins Ryan, for appellant.

Wincek & DeRosa Co., L.P.A., Joseph C. DeRosa and John C. Bucalo, for appellee Karen Chesnick.

Jim Petro, Attorney General, and Erica L. Bass, Assistant Attorney General, for appellees Industrial Commission of Ohio, Bureau of Workers' Compensation, and Self–Insuring Employers Evaluation Board.