DECISION
{¶ 1} Relator, The Gradall Company, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order that granted the motion of claimant-respondent John Bihari and reclassified the Relator, benefits paid to Bihari from wage loss compensation to temporary total disability compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded that (1) the doctrines of res judicata, laches, and estoppel do not preclude Bihari from succeeding in having his benefits reclassified from non-working wage loss to temporary total disability compensation; (2) R.C. 4123.52, and the commission's continuing jurisdiction, do not apply to the facts presented in this action; and (3) the evidence of record is sufficient to support Bihari's entitlement to temporary total disability compensation for the requested time period. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's decision, rearguing those matters addressed in the decision:
1. The Magistrate incorrectly rejected Gradall's argument regarding the defenses of laches and estoppel.
2. The Magistrate incorrectly shifted the burden of proof to Gradall, instead of with Bihari, and in doing so, ignored the fact that no medical evidence supports the payment of temporary total disability as requested by Bihari.
3. The Magistrate incorrectly rejected Gradall's argument that the Industrial Commission's action in reclassifying the benefits paid to Respondent, Bihari, from wage loss compensation to temporary total compensation was barred by the doctrine of res judicata, and further, that the Industrial Commission in taking such action failed to properly invoke its continuing jurisdiction.
 {¶ 4} Relator's first objection challenges the magistrate's determination that laches and estoppel do not bar the reclassification Bihari requested. Relator contends that laches applies because Bihari delayed in filing a motion to convert non-working wage loss compensation to temporary total disability compensation. Acknowledging the need to show prejudice, relator contends it was prejudiced because it did not pursue opportunities to have Bihari examined to determine his entitlement to temporary total disability compensation, resting instead on the agreement between Bihari and relator that he would accept wage loss compensation. Relator further contends the magistrate improperly interpreted its argument and wrongly focused on the concept of surprise rather than prejudice to relator. Relator's contentions are unpersuasive.
 {¶ 5} As Bihari properly observes, the magistrate referred to surprise only because relator's argument suggested that had it known of Bihari's intent to seek reclassification of received benefits, it would have had him examined to determine whether Bihari reached maximum medical improvement. Regardless of the terminology the magistrate used, the magistrate properly concluded relator's prejudice argument fails, as relator was well aware that Bihari agreed under protest and duress to accept wage loss compensation, rather than temporary total disability compensation. Knowing of Bihari's position, relator had the opportunity to have Bihari examined, if it so desired; instead, it chose to pay wage loss compensation. In any event, as Bihari notes, following his surgery in July 2004, Dr. Hunt submitted a request for additional occupational therapy. Relator denied the request, the matter was heard before the commission, and the commission granted the request for additional treatment. The commission's decision suggests relator would not have procured a determination that Bihari reached maximum medical improvement.
 {¶ 6} Under its first objection, relator also contends that the magistrate wrongly rejected its estoppel argument. In essence, relator contends that Bihari made a promise to accept wage loss compensation, and relator reasonably relied on that promise in paying wage loss compensation to Bihari.
 {¶ 7} Contrary to relator's contentions, the magistrate and the commission properly determined estoppel does not bar the reclassification of benefits. As the magistrate and the commission observed, financial constraints forced Bihari to accept the wage loss compensation. While financial constraints will not always support a finding of duress, here the facts allow the conclusion that Bihari's financial constraints arose out of relator's actions in refusing to pay temporary total disability compensation and then using Bihari's lack of income as leverage to induce his agreement to accept wage loss compensation instead of the temporary total disability compensation to which he was entitled.
 {¶ 8} Under those circumstances, we cannot conclude that Bihari's agreement to accept wage loss compensation bars him from later seeking to reclassify those benefits. See Blodgett v.Blodgett (1990), 49 Ohio St.3d 243 (noting that economic duress involved [1] one side involuntarily accepting the terms of another, [2] circumstances permitting no other alternative, and [3] circumstances that were the result of coercive acts of the opposite party such that the duress is the result of the opposing parties' conduct and not the necessities of the one claiming duress). Relator's first objection is overruled.
 {¶ 9} Relator's second objection contends the record lacks medical evidence to support the payment of temporary total disability compensation.
 {¶ 10} Initially, we note that Bihari's motion, for the most part, did not seek payment of temporary total disability compensation outright; rather, it sought to reclassify as temporary total disability compensation the non-working wage loss compensation benefits relator already paid to Bihari. As a result, the wage loss compensation relator was paying to Bihari provided the medical premise for the temporary total disability compensation. To the extent the motion sought temporary total disability compensation beyond reclassification of wage loss compensation, neither party disputes that Bihari's doctor placed restrictions on him that prevented him from returning to his former position of employment; nothing in the record suggests those restrictions ever were lifted. When we combine those two factors, we cannot find the commission was without evidence to reclassify Bihari's wage loss compensation and to award temporary total disability compensation in light of relator's inability to provide light duty work to Bihari. Relator's second objection is overruled.
 {¶ 11} Relator's third objection contends the doctrine of res judicata precluded the commission from reclassifying benefits relator paid to Bihari. Relator further asserts the commission abused its discretion because it failed to invoke its continuing jurisdiction, necessitated by the res judicata effect of relator's paying wage loss compensation to Bihari.
 {¶ 12} As the commission and magistrate both concluded, res judicata does not bar Bihari's motion seeking reclassification of benefits. The issue of working wage loss for the time period following October 19, 2003 was never addressed in commission hearings until the district hearing officer and the staff hearing officer heard the matter on January 18, 2005 and April 11, 2005, respectively. As a result, no prior ruling on the issues existed to bar consideration of the matter. While relator suggests its position as a self-insurer gives its decision to pay wage loss compensation the same effect as a commission order in these circumstances, relator cites no case law to support such a proposition, and we decline relator's invitation to adopt it here. Because the matter was not previously adjudicated before the commission, res judicata does not bar the commission from considering Bihari's motion to reclassify benefits. Relator's third objection is overruled.
 {¶ 13} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Brown and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio ex rel. : The Gradall Company, :
Relator, :
v. No. 05AP-820 :
The Industrial Commission of Ohio, [William E. Mabe], Administrator : Bureau of Workers' Compensation and John Bihari, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on February 16, 2006 Black, McCuskey, Souers Arbaugh, Gust Callas and Brian R.Mertes, for relator.
Jim Petro, Attorney General, and Shawn M. Wollam, for respondent Industrial Commission of Ohio.
Sammon Bolmeyer Co., LPA, and David J. Briggs, for respondent John Bihari.
 IN MANDAMUS {¶ 14} Relator, The Gradall Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted the motion of respondent John Bihari ("claimant") and reclassified the benefits paid to claimant from wage loss compensation to temporary total disability ("TTD") compensation.
Findings of Fact:
 {¶ 15} 1. On November 28, 2000, claimant sustained a work-related injury when a co-worker hit a switch which caused a crane to lower a three-ton boom onto claimant's hand. This resulted in a crush injury and amputation of two-thirds of claimant's right index finger. Over the years, claimant's claim has been additionally allowed for several conditions and currently, claimant's claim is allowed for the following: "2/3 amputation of right index finger; crush injury right index finger; right carpal tunnel syndrome; left elbow lateral epicondylitis; right lateral epicondylitis; radial nerve entrapment of the right proximal forearm and elbow."
 {¶ 16} 2. Relator was able to accommodate claimant's restrictions and was able to provide him with light-duty work for various periods of time beginning January 31, 2001. Claimant was off work following carpal tunnel surgery in August 2001, and returned to restricted-duty work on November 19, 2001. Claimant continued to work with restrictions through October 19, 2003. During this time, relator, a self-insured employer, paid claimant wage loss compensation.
 {¶ 17} 3. On October 23, 2003, claimant signed a C-84 form seeking the payment of TTD compensation. Claimant's treating physician, R. William McCue, M.D., signed the C-84 form on November 7, 2003, certifying a period of TTD compensation from October 24, 2003 through an estimated return-to-work date of January 5, 2004.
 {¶ 18} 4. By letter dated November 24, 2003, counsel for relator sent to claimant's counsel a letter indicating that relator was willing to pay claimant wage loss compensation from October 20, 2003 instead of TTD compensation. Counsel for relator requested that claimant file an application for wage loss compensation and that claimant withdraw his C-84 motion requesting the payment of TTD compensation. Further, counsel for relator indicated that relator was willing to pay claimant TTD compensation for a reasonable period of time following elbow surgery, but, that, once claimant was released to return to some work, relator would resume paying claimant wage loss compensation if he was released to return to work with restrictions. Further, counsel for relator referenced a case pending in the Tuscarawas County Court of Common Pleas which relator indicated claimant should dismiss. In closing, relator indicated that, if claimant agreed to accept the foregoing, then a check could be issued to him within a week.
 {¶ 19} 5. In response to relator's November 24, 2003 letter, which was sent to claimant's counsel by fax, counsel for claimant drafted a letter conveying the following relevant information:
* * * Mr. Bihari has been off work since October 20, 2003 when, he claims, he was told by Gradall that they no longer had work within his physical restrictions. A C-84 was submitted directly to Gradall by Mr. Bihari's treating physician, Dr. R. William McCue. With the exception of the periods of time Mr. Bihari did not work (for which he was paid Temporary Total Disability compensation), he has been under work restrictions since the original date of injury, November 28, 2000. According to Mr. Bihari, Gradall has sometimes honored those restrictions, and sometimes they have not. As I have indicated, the information which was provided to me was that Gradall told Mr. Bihari that they could not honor the restrictions, that they did not have work within those restrictions. Apparently, Mr. Bihari complained that the work being given to him exceeded the doctor's restrictions and was told at that point that if he could not do the work that he was assigned, then he should stop working.
 {¶ 20} Further, counsel indicated that claimant had not been paid any benefits since he last worked on October 20, 2003. Thereafter, claimant's counsel indicated as follows:
Based upon Mr. Bihari's representation, it was and is my belief that the benefit to which he is entitled is TT. After having our conversation on Friday and today, I researched the issue since Mr. Callas indicated today that the proper benefit is wage loss and that Gradall is willing to pay Wage Loss benefits. According to the [State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630] case, if the employer does not have work available to the injured worker within the doctor's restrictions, then the injured worker is entitled to Temporary Total Disability benefits. It seems to me that TT is the benefit to be paid. There has never been a finding that Mr. Bihari has reached MMI.
Can you please advise why you, on behalf of Gradall, are willing to pay Wage Loss benefits but not Temporary Total Disability benefits? * * *
I have not yet made a decision on whether to withdraw the C-84 since I honestly believe that Mr. Bihari is entitled to TT rather than Wage Loss benefits.
 {¶ 21} Thereafter, counsel for claimant discussed various periods of time wherein claimant had not been paid any compensation by relator, specifically during times when the plant was shut down. Relator was asked whether it would be willing to pay claimant wage loss compensation for the weeks when the plant was shut down. Further, counsel informed relator that, inasmuch as claimant was successful administratively, relator could dismiss the common pleas court proceedings. In closing, claimant's counsel informed relator as follows:
* * * Your second-to-last paragraph makes it sound as if the payment of either Wage Loss or TT to Mr. Bihari since October 20, 2003 "hinges upon Mr. Bihari's agreement." In all fairness to Mr. Bihari, I would like to resolve that issue first. He has been waiting long enough. As you might expect, it is nearly impossible to support a family for over five weeks without an income. That situation would make the most tolerable of man intolerable.
In summary, I believe that he is entitled to TT since October 20th for the reason that light duty work was not available to Mr. Bihari and that he is entitled to Wage Loss benefits for the several weeks that Gradall was on shutdown. Also, at this time I cannot commit to an agreement to dismiss our Complaint when it is altogether feasible that Gradall can dismiss its Notice of Appeal, specifically reserving a right to re-file the appeal.
 {¶ 22} 6. Thereafter, counsel for claimant authored a letter dated November 25, 2003, after meeting with claimant and discussing relator's proposal that claimant accept wage loss benefits effective October 20, 2003. Through that letter, counsel informed relator of the following:
* * * I further told him that it is my sincere belief that he is entitled to Temporary Total Disability benefits in view of the fact that The Gradall Company is no longer able to accommodate his restrictions. He feels that your position is grossly unfair and that you are, essentially, holding him "ransom" in that he is in dire financial straits with creditors, banks and collection agencies hounding him for unpaid debts. As you know, he has been without a penny of income since October 20, 2003. He feels that you have left him with no choice but to sign the Wage Loss application so that he has some sort of income so that he can pay his bills and provide for his family. I provided him with the option of either signing the Wage Loss application so that he can receive immediate Wage Loss benefits or not sign the Wage Loss application and wait until our request for TT can be addressed by the Industrial Commission. I told him that at the earliest, the matter could not be heard for two weeks, with an outside hearing date of four to six weeks. He is in no position to wait and, quite pointedly, he does not have the luxury of being able to wait two weeks. He showed me all of the letters and notices of late payment he has received. Mr. Bihari begrudgingly singed the Wage Loss application. Faxed herewith please find said Wage Loss application.
 {¶ 23} Counsel then informed relator that he had spoken with the claims examiner and that he had been informed by her that claimant was entitled to TTD compensation and not wage loss compensation because claimant had never been found to have reached maximum medical improvement ("MMI") and, as of October 20, 2003, relator no longer had work available for claimant within his restrictions. Counsel stated further as follows:
* * * With the exception of Gradall wishing to exhaust as many of the 200 weeks to which Mr. Bihari is eligible, I cannot fathom any other reason for you insisting that he be paid Wage Loss rather than TT. Again, he is agreeing to the wage loss benefits under duress.
* * *
Mr. Bihari wants it made clear and in no uncertain terms that he is signing the Wage Loss application under protest.
 {¶ 24} 7. Thereafter, by letter dated November 26, 2003, counsel for relator informed Kelly Forster, with Compensation Consultants, Inc., as follows:
* * * Mr. Bihari has agreed to accept payment of wage loss compensation in lieu of temporary total disability benefits. Please note that the period of wage loss payable to Mr. Bihari is from October 20, 2003 to the present. Payments will continue until such time as Mr. Bihari undergoes surgery for the allowed conditions in his claim. At that time, the benefit will be switched to temporary total disability until such time as Mr. Bihari is found to be maximum medically improved. * * *
 {¶ 25} 8. Thereafter, relator did agree to pay claimant for periods of time when the plant was shut down and, by letter dated January 9, 2004, relator informed claimant's attorney that a check was forthcoming.
 {¶ 26} 9. Thereafter, by fax transmission dated January 9, 2004, counsel for claimant informed counsel for relator that claimant was not timely receiving compensation and requested that relator set out a schedule for future payments.
 {¶ 27} 10. By letter dated January 15, 2004, counsel for claimant corresponded with Ms. Forster with Compensation Consultants, Inc., inquiring why payment for claimant's therapy visits had been rejected in spite of the fact that claimant had received prior authorization for those treatments. Further, Ms. Forster was notified that relator had not reimbursed claimant for travel expenses relative to his rehabilitation.
 {¶ 28} 11. Correspondence continued back and forth between counsel over issues such as whether claimant had been shorted amounts for compensation; whether relator had properly reported claimant's gross wages for certain weeks; the fact that certain unpaid medical bills and travel expenses remained outstanding including the March 5, 2004 letter to Ms. Forster with Compensation Consultants, Inc., indicating that:
Mr. Bihari has not yet received his Wage Loss benefits from August 7th to October 19th, 2003. * * *
Also, I wrote to you on January 15, 2004 concerning both payment of Dr. McCue's medical bills for dates of service in October and November 2003 and reimbursement to Mr. Bihair [sic] for travel expenses beginning on October 2, 2003. * * *
 {¶ 29} 12. Thereafter, counsel for claimant informed counsel for relator that claimant received a check "grossly in excess of what he was owed for that period," and again requesting information relative to a perceived shortage in the amount of wage loss benefits and travel reimbursement.
 {¶ 30} 13. Counsel for claimant again notified Ms. Forster, by letter dated March 17, 2004, that claimant had returned the check to relator which was in excess of what claimant was entitled to receive and requesting that a new check be issued in the appropriate amount. Further, counsel addressed a delay in sending certain benefits to claimant following a hearing before the commission, re-addressed the issue of claimant having been shorted a certain dollar amount, and again requested reimbursement for travel expenses and payment of certain pre-authorized medical visits.
 {¶ 31} 14. In a fax transmission of March 22, 2004, counsel for claimant requested that a certain payment be overnighted to claimant and that the other issues be resolved immediately.
 {¶ 32} 15. By letter dated October 14, 2004, counsel for claimant notified relator of the following:
Only recently has it come to the attention of John Bihari and me that the benefits which he is receiving are being characterized as `Wage Loss' on the check stubs. In light of the fact that he has been off work and unable to work since July 27, 2004 on account of elbow surgery, the benefits that he is receiving should be characterized as Temporary Total Disability benefits. Please re-characterize these past benefits and be sure that the amount he is being paid is $488.99 per week.
(Emphasis sic.)
 {¶ 33} 16. In November 2004, claimant filed a motion requesting the payment of TTD compensation seeking payment for treatment and/or diagnostic testing and re-questing that the nonworking wage loss compensation be paid to him from October 20, 2003 to July 26, 2004 and from November 2, 2004 to date be re-classified as TTD compensation.
 {¶ 34} 17. While the foregoing discussions transpired, claimant filed a motion requesting wage loss compensation on October 8, 2003. Claimant sought wage loss compensation for the following relevant time periods: "06/18/2001 through 06/24/2001; 07/02/2001 through 07/08/2001, 07/16/2001 through 07/22/2001; and from 11/19/2001 through 10/19/2003."
 {¶ 35} 18. The matter was heard before a district hearing officer ("DHO") on January 6, 2004 at which time it was reaffirmed that claimant was not requesting any period of TTD compensation. The DHO granted the requested compensation for all of the requested time periods with the exception of August 7, 2003 to October 19, 2003.
 {¶ 36} 19. Upon appeal, the matter was heard before a staff hearing officer ("SHO") on February 10, 2004. The SHO affirmed the prior DHO order in the following respects: reiterated that there was no pending claim for TTD compensation; found that claimant had returned to work other than his former position of employment; that claimant was currently employed as a utility man; that claimant had suffered a wage loss as a result of the allowed conditions; and authorizing the payment of wage loss compensation for all the requested periods, including that time period previously denied by the DHO (August 7 to October 19, 2003).
 {¶ 37} 20. Thereafter, claimant's motion for authorization of treatment and/or diagnostic testing, for TTD compensation, and seeking to reclassify previously paid wage loss compensation as TTD compensation was heard before a DHO on January 18, 2005. Claimant's motion was granted. Specifically, the DHO authorized occupational therapy for claimant and determined that the nonworking wage loss compensation paid to claimant by relator for the time period of October 20, 2003 to July 26, 2004 and from November 2, 2004 to date be reclassified as TTD compensation. The DHO first addressed relator's arguments that claimant should not be permitted to have his compensation reclassified at this time as follows:
The parties agree that the claimant worked on light duty for various periods and was paid working wage loss through 10/19/2003; that the employer informed the claimant on 10/20/2003 at a meeting that no further light duty work was available; that the employer paid nonworking wage loss to the claimant from 10/20/2003 to 07/26/2004; that the claimant had surgery on 07/27/2004; that the employer paid temporary total compensation from 07/27/2004 through 11/01/2004; that the claimant's physician of record, Dr. Hunt, released the claimant to light duty work on 11/02/2004; and that the employer paid nonworking wage loss from 11/02/2004 to date.
The employer argues that the issue of whether the claimant is entitled to wage loss or temporary total compensation is res judicata and that the claimant must show good cause under Ohio Revised Code 4123.52 to readdress this issue. The Hearing Officer finds this argument unpersuasive, as the periods at issue were paid by the Self-Insured Employer without an order from the Industrial Commission. The District Hearing Officer's order mailed 01/08/2004 and Staff Hearing Officer's order mailed 02/14/2004 addressed various periods of working wage loss through 10/19/2003. These orders do not address the claimant's entitlement to nonworking wage loss, nor do they address compensation after 10/19/2003. No Industrial Commission orders address temporary total compensation or wage loss after 10/19/2003. Thus, this issue cannot be considered res judicata, and continuing jurisdiction under Ohio Revised Code 4123.52 is not necessary to address the issue raised by the claimant's C-86.
The employer also argues that the claimant's request is barred by laches, estoppel, or waiver. The Hearing Officer likewise finds this argument unpersuasive based on the claimant's representative's 11/25/2003 letter to the employer's representative. This letter clearly informs the employer that the claimant is filing a wage loss application solely because the employer refuses to pay temporary total compensation and the claimant is in financial straits. This letter also states that the claimant's representative believes that the claimant is entitled to temporary total compensation rather than wage loss compensation. The Hearing Officer finds, based on this letter, that the employer's argument that the employer did not know that the claimant would ask for temporary total compensation to be unpersuasive. The employer clearly knew in November 2003 that the claimant requested temporary total compensation than wage loss compensation, and accepted wage loss benefits only because of his need for income.
As the claimant's representative's letter makes clear, it was the employer's demand that the claimant apply for wage loss and refusal to pay temporary total compensation which resulted in the payment of wage loss compensation rather than temporary total compensation, and thus the employer cannot now complain that it is prejudiced due to its inability to have the claimant examined on the issue of maximum medical improvement for the period beginning 10/20/2003.
(Emphasis sic.)
 {¶ 38} 21. Thereafter, the DHO noted that, pursuant to Stateex rel. Nestlé USA-Prepared Foods Div., Inc. v. Indus. Comm.,101 Ohio St.3d 386, 2004-Ohio-1667, a claimant can be eligible for both wage loss compensation and TTD compensation for the same time period, although the claimant cannot receive both forms of compensation at the same time. The DHO then determined that the following issue needed to be resolved: "The question then becomes whether the claimant was legally entitled to the payment of temporary total compensation." In addressing that issue, the DHO determined that claimant was entitled to receive TTD compensation for that time period as follows:
The claimant's entitlement to working wage loss ended on 10/19/2003 when the employer informed the claimant that it no longer had light duty work available. There is no indication that the claimant was able to return to work at his former position of employment at that time. To the contrary, return to work forms completed by Dr. McCue on 10/02/2003 and 11/3/2003 indicate that the claimant had restrictions through at least 01/20/2004. Thus, the Hearing Officer finds pursuant to Ramirez that the claimant was legally entitled to temporary total compensation beginning 10/20/2003 as he was unable to return to work at his former position of employment.
There is no indication on file that the claimant was released to return to work without restrictions between 10/20/2003 and 07/22/2004. To the contrary, the Self-Insured Employer paid nonworking wage loss during this period, thus acknowledging the claimant's inability to return to work at his former position of employment and his continuing restrictions.
Therefore, the Hearing Officer orders that the compensation paid by the Self-Insured employer to the claimant from 10/20/2003 through 07/27/2004 shall be classified as temporary total compensation rather than nonworking wage loss as the claimant has met all of the eligibility requirements for temporary total compensation.
Regarding compensation paid by the Self-Insured Employer from 11/02/2004 to date, the Hearing Officer finds that Dr. Hunt completed a C-84 dated 11/01/2004 which disabled the claimant from 07/27/2004 to an estimated return to work date of 11/02/2004. This form also indicates that the claimant is not
able to return to work at his former position of employment, hasnot reached maximum medical improvement, and is only able to work on light duty as of 11/02/2004. The Self-Insured Employer stopped the claimant's temporary total compensation as of 11/01/2004 and began paying nonworking wage loss again beginning 11/02/2004.
The Hearing Officer finds that there is no evidence that the claimant has returned to work, has been released to return to work at his former position of employment, or has been found to be at maximum medical improvement; or that the employer has made an offer of light duty work within the claimant's restrictions. Thus, there is no basis for terminating temporary total compensation as of 11/01/2004 pursuant to Ohio Administrative Code 4121-3-32 or for changing the claimant's temporary total compensation benefits to nonworking wage loss benefits as of 11/02/2004.
Accordingly, the Hearing Officer orders that the benefits paid from 11/02/2004 to date shall be classified as temporary total compensation rather than nonworking wage loss.
(Emphasis sic.)
 {¶ 39} 22. Relator appealed and the matter was heard before an SHO on April 11, 2004. The SHO affirmed the prior DHO order in full and reiterated the commission's reasoning relative to claimant's entitlement to TTD compensation as follows:
This Staff [H]earing Officer has specifically relied upon the fact that after 10/19/2003 employer would no longer provide light duty within claimant's restrictions, Dr. McCue's 10/02/2003 and 11/03/2003 forms wherein he continued claimant's restrictions through at least 01/20/2005, Dr. Hunt's C-84 which disables claimant from 07/27/2004 to an estimated return to work date of 11/02/2004 and opines claimant has not reached maximum medical improvement and cannot return to his former position of employment.
 {¶ 40} 23. Relator's appeal was refused by order of the commission mailed May 10, 2005.
 {¶ 41} 24. Relator's request for reconsideration was denied by order of the commission mailed June 2, 2005.
 {¶ 42} 25. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 43} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 44} In this mandamus action, relator argues that the commission abused its discretion by granting claimant's motion to reclassify the formerly paid wage loss compensation as TTD compensation. Relator makes the following arguments: (1) claimant voluntarily agreed to accept wage loss benefits instead of pursuing a claim for TTD compensation and claimant is barred by the doctrines of laches, estoppel, and res judicata from pursuing TTD compensation at this time; (2) the commission abused its discretion by granting claimant's motion without properly exercising continuing jurisdiction over the claim; and (3) the commission abused its discretion as there is no medical evidence in the record to support TTD compensation being paid for the time period at issue. For the reasons that follow, this magistrate finds that none of relator's arguments are well-taken and finds that this court should deny relator's request for a writ of mandamus.
 {¶ 45} The magistrate will address relator's arguments in the order in which they were made. Relator first contends that the doctrines of res judicata, laches, and estoppel preclude claimant from succeeding in having his benefits reclassified. First, the doctrine of res judicata does not apply in the present case. Pursuant to the doctrine of res judicata, a valid final judgment upon the merits bars all subsequent actions based on any claims arising out of the transaction or occurrence that was the subject matter of the previous action. See Shaper v. Tracy (1996),76 Ohio St.3d 241. The issue of claimant's entitlement to wage loss compensation or TTD compensation had not been adjudicated inasmuch as the periods of disability at issue were paid by relator, a self-insured employer, without an order from the commission. Res judicata simply does not apply.
 {¶ 46} Relator also argues that the doctrines of laches and estoppel bar claimant's action; however, the commission disagreed and so does this magistrate. Relative to promissory estoppel, relator must show the following: (1) the existence of a promise; (2) that the promissor should reasonably expect to induce action or forbearance by the promise; and (3) that does induce such action or forbearance. Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100.
 {¶ 47} Relator asserts that it is undeniable that a promise was made: in exchange for claimant's promise to accept wage loss compensation and forego his claim to TTD compensation, relator promised to immediately pay him wage loss compensation. Relator asserts that it forfeited its ability to defend the payment of wage loss compensation during the time period and did not challenge the extent of claimant's disability nor have claimant examined as to the extent of his disability which relator argues it clearly could have done.
 {¶ 48} However, as the commission found, claimant only agreed to accept wage loss compensation during the time that he believed that he was rightfully entitled to TTD compensation because he was in a difficult financial situation and could not wait the weeks he would need to wait in order to process his pending TTD compensation since relator was contesting the payment of that award. In much of the correspondence laid out in the findings of fact, it is specifically noted, repeatedly, that claimant was accepting wage loss compensation under duress. Further, upon review of the record in this case, the magistrate specifically notes that there are numerous references in the record to the fact that delays were occasioned in paying compensation to claimant and that those delays, whether intended by relator or not, constituted further evidence of claimant's situation when he ultimately acquiesced to accept wage loss compensation instead of TTD compensation. Furthermore, the medical evidence in the present case indicates that claimant's treating physician continuously indicated that claimant was not able to return to his former position of employment, but, that, he could perform other work within certain restrictions. Relator made such work available to claimant, paying him wage loss compensation and, during those times that claimant could not work at all following surgery, relator paid him TTD compensation. The record also indicates that claimant continued to need and receive considerable therapy relative to his allowed conditions and that, even when the employer no longer had light duty work available for him, relator knew that claimant still needed additional surgery.
 {¶ 49} Claimant was originally injured in November 2000 and relator began paying him wage loss compensation. Pursuant to statute, wage loss compensation can only be paid for a total of 200 weeks. Ultimately, claimant had been paid approximately 155 weeks of wage loss compensation during which time he remained unable to perform his former position of employment. According to the medical evidence, claimant remains unable to perform his former position of employment and, as such, potentially remains eligible for some compensation; however, at this point in time, claimant would only have approximately 50 weeks of wage loss compensation which could still be paid to him.
 {¶ 50} Claimant and relator were not in equal bargaining positions when the relative "promises" were made and, as such, the magistrate finds that estoppel does not preclude claimant from requesting that his compensation be reclassified. Furthermore, relator's doctrine of laches fails as well. In order to establish the affirmative defense of laches, relator must provide material prejudice of an unexplained or unreasonable delay in asserting a right. State ex rel. Roadway Express v.Indus. Comm. (1998), 82 Ohio St.3d 510. In order to succeed, relator must show that it will be materially prejudiced by the delay on the part of claimant asserting his claim. Again, based upon the correspondence between the parties, relator cannot assert that it is surprised by claimant now asserting that this compensation should be classified as TTD compensation. Throughout the correspondence, counsel for claimant continually indicated that he believed that claimant was entitled to TTD compensation and questioned relator's reluctance to pay that compensation.
 {¶ 51} In this case, after originally certifying the claim, relator and claimant remained at odds on every issue: whether it was the authorization of treatment, the payment of compensation, the allowance of new conditions, whether or not a job was available for claimant and whether or not relator would or would not push claimant to perform tasks outside his restrictions. At a time when there now is some evidence in the file that claimant has finally reached MMI, claimant only has a small number of weeks of wage loss compensation which could be paid to him even though he may never be able to go back to his former position of employment. If anyone has been put in a negative position based upon promises made, it is claimant and not relator.
 {¶ 52} As indicated above, the magistrate finds that neither the doctrines of res judicata, laches, or estoppel precluded the commission from granting claimant's motion to reclassify the compensation paid to him.
 {¶ 53} Next, the magistrate finds that relator's argument that the continuing jurisdiction of the commission was not properly invoked such that the commission could not even consider claimant's motion to reclassify his wages fails simply because the commission never addressed this issue in the first place. As such, R.C. 4123.52 does not even apply to the issue of whether or not compensation paid for the period subsequent to October 19, 2003 was never addressed by the commission and relator's argument that the commission's continuing jurisdiction was never invoked is immaterial and has absolutely no bearing.
 {¶ 54} Lastly, relator contends that there is no medical evidence in the record to support the payment of TTD compensation.
 {¶ 55} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 56} In finding that claimant did meet his burden of proving entitlement to TTD compensation for the requested time period, the commission specifically noted that any entitlement claimant had to working wage loss compensation ended October 19, 2003 when relator informed him that it no longer had light duty work available. As of that time, forms completed by Dr. McCue on October 2 and November 3, 2003, indicate that claimant had restrictions through at least January 20, 2005. It is and has been undisputed that those restrictions precluded claimant from returning to his former position of employment. Further, there is no evidence in the file that claimant had been released to return to work without restriction between October 20, 2003 and July 22, 2004. Further, as the commission noted, the employer had gone ahead and paid claimant wage loss compensation through July 27, 2004, thereby acknowledging that claimant was unable to return to work at his former position of employment and substantiating the fact that claimant still had continuing restrictions. Furthermore, as the commission determined, Dr. Hunt completed a C-84 dated November 1, 2004, indicating that claimant was precluded from returning to his former position of employment from July 27, 2004 through an estimated return-to-work date of November 2, 2004. That form specifically indicated that claimant could not return to his former position of employment, had not reached MMI, and was only capable of performing light duty work. Inasmuch as there was no evidence that claimant had returned to his former position of employment, had been released to return to work at his former position of employment, had been found to have reached MMI, or that the employer had made another offer of light duty work within claimant's restrictions, the commission determined that all of the medical evidence in the record established that claimant was temporarily and totally disabled during this time period and relator's argument to the contrary fails.
 {¶ 57} Based on the foregoing, it is the magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in reclassifying the compensation paid to claimant from wage loss compensation to TTD compensation and in awarding TTD compensation and relator's request for a writ of mandamus should be denied.