Lanzinger, J.,
dissenting.
{¶ 20} I respectfully dissent and would hold that the Industrial Commission should have considered the medical opinions in Smith’s case. I would therefore affirm the judgment of the court of appeals.
{¶ 21} An injured worker may qualify for a number of different benefits under Ohio’s workers’ compensation statutes. The Industrial Commission awarded permanent-total-disability benefits to George Smith in 1998 due to his persistent vegetative state that resulted from his work-related injury. This benefit, pursuant to R.C. 4123.58, is designed to compensate for the loss of earning capacity for life. State ex rel. Nestle USA — Prepared Foods Div., Inc. v. Indus. Comm., 101 Ohio St.3d 386, 2004-Ohio-1667, 805 N.E.2d 1098, ¶ 8. In 2004, Smith was granted “permanent partial disability” in the form of scheduled-loss benefits under R.C. 4123.57(B) for loss of the use of his arms and legs. While it might appear that an award for permanent partial disability duplicated his earlier permanent-totai-disability benefits, R.C. 4123.58(E) states that “[cjompensation payable under this section for permanent total disability is in addition to benefits payable under division (B) of section 4123.57 of the Revised Code [for permanent partial disability].” Any permanent-partial-disability award is in the nature of damages and is specifically enumerated in R.C. 4123.57(B). Smith now seeks an award for the permanent loss of sight and the permanent loss of hearing as specified in that section.
*318 {¶ 22} In reversing the judgment of the Tenth District Court of Appeals, the majority holds that because Smith cannot be given a definitive test for sight and hearing due to his persistent vegetative state, “the evidence presented to the Industrial Commission does not support a finding that Smith’s eyes and ears no longer function.” Majority opinion at ¶ 18. While it is true that the loss of brain-stem functioning is not listed in the schedule for compensation set forth in R.C. 4123.57(B), the schedule also does not specifically list loss of eyes or loss of ears, as it does other parts of the body. Instead, the schedule lists “loss of sight” and “loss of hearing,” which are different.
{¶ 23} Smith’s scheduled-loss compensation for the total loss of use of his arms and legs did not require a percentage of loss to be shown, but the statutory standard is different when the loss involves vision and hearing. For a less than total loss of vision, R.C. 4123.57(B) authorizes compensation “based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision.” For the loss of hearing, R.C. 4123.57(B) authorizes an award if the loss is permanent and total in one or both ears.
{¶ 24} We have been flexible in determining the proof necessary to establish a total loss of vision or hearing under R.C. 4123.57(B). We have found a total loss of vision or hearing for purposes of R.C. 4123.57(B) when the loss was clinically diagnosed as less than 100 percent. In State ex rel. AutoZone, Inc. v. Indus. Comm., 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, we held that a diagnosis of legal blindness in one eye equated to the loss of sight of an eye for purposes of R.C. 4123.57(B), and in State ex rel. Kincaid v. Allen Refractories Co., 114 Ohio St.3d 129, 2007-Ohio-3758, 870 N.E.2d 701, we determined that a loss of vision occurring on an intermittent basis was permanent and total for purposes of R.C. 4123.57(B).
{¶ 25} In State ex rel. Sheller-Globe Corp. v. Indus. Comm., 66 Ohio St.2d 51, 419 N.E.2d 1084 (1981), we affirmed the judgment in State ex rel. Sheller-Globe Corp. v. Indus. Comm., 10th Dist. Franklin No. 80AP-194, 1980 WL 353639 (Aug. 21, 1980), in which the court of appeals stated:
Within the context of the statute, the word “hearing” connotes the ability to comprehend everyday speech. In other words, hearing connotes the ability to comprehend the spoken word for the purpose of communication with others. The mere fact that a person is able to discern certain sounds of certain frequencies at certain intensities does not prevent a finding of a total loss of hearing if the person is unable to hear and comprehend the spoken word even when spoken extremely loud.
*319 Malek & Malek and Douglas C. Malek, for appellee George Smith.
Michael DeWine, Attorney General; and Dinsmore & Shohl, L.L.P., Michael L. Squillace, and Christen S. Hignett, for appellant.
(Emphasis added.) Id. at *3.
{¶ 26} Smith suffered his work-related injury in December 1995, and his claim was initially allowed for bilateral inguinal hernia. After surgery to repair the hernia, he suffered postoperative complications that led to brain damage. His claim was later amended to add the conditions of anoxic brain damage and seizure disorder.
{¶ 27} In March 2009, Dr. Bienvenido Ortega examined Smith to determine the extent of his medical impairment. Dr. Ortega noted that Smith showed no comprehension of language and did not respond to verbal questions. He also noted that Smith’s gaze was fixed but that his pupils reacted to bright light, which signifies that his optic nerves are intact. Dr. Ortega concluded that Smith had bilateral vision and hearing loss but that the losses were due to the loss of his brain function.
{¶28} On December 28, 2009, Dr. Robert Hess examined Smith. Dr. Hess agreed with Dr. Ortega that Smith’s hearing and vision could not be tested due to his inability to respond to external stimuli. Dr. Hess stated that he had observed Smith’s pupils respond to light but that that response was merely a reflex. Dr. Hess determined that Smith’s brain could not process any visual stimulation or receive auditory communication. Thus, Dr. Hess concluded, Smith suffered the loss of his visual and auditory functions for all practical purposes.
{¶ 29} This medical evidence established that Smith is unable to see or hear and that the losses are the result of his allowed condition, i.e., the anoxic brain damage. I would hold that this medical evidence should have been considered by the Industrial Commission in determining whether Smith has established the right to additional compensation as a result of his allowed condition. For this reason, I dissent and would affirm the judgment of court of appeals and adopt its analysis.
O’Connor, C.J., and Pfeifer, J., concur in the foregoing opinion.